THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, v. F.J., a Minor, Respondent-Appellant.

First District (2nd Division)   No. 1—99—1907

Opinion filed August 8, 2000.

Rita A. Fry, Public Defender, of Chicago (Suzanne A. Isaacson, Assistant Public Defender, of counsel), for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Theodore Fotios Burtzos, Janet Powers Doyle, and Sharese Shields, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE COUSINS delivered the opinion of the court:

F.J. was charged by petition with unlawful possession of a weapon. He moved to quash arrest and suppress evidence, arguing that the police stopped and searched him without a reasonable basis for suspicion. After a hearing, the trial court denied the motion. The court then adjudicated F.J. delinquent and sentenced him to 18 months' probation with various conditions.

F.J. now appeals, arguing that the trial court erred in denying his motion to quash arrest and suppress evidence.

We reverse and remand.

## BACKGROUND

The only witness at the suppression hearing was Officer Ferguson, who made the arrest. Ferguson testified that around 10 p.m. on December 18, 1998, he and his partner were on patrol in the area of 1150 South Richmond. According to Officer Ferguson, this is a high crime area with much narcotics activity and there had been a gang disturbance reported in the area a couple minutes previously.

Ferguson saw F.J. standing at the entrance of an alley and decided to conduct a field interview. As he got out of his car, Ferguson saw F.J. glance at him and put an object in his pocket. Ferguson did not know what the object was. Since he did not know whether the object was a weapon, Ferguson performed a pat-down search on F.J. without his consent. He felt a handgun in F.J.'s pocket, removed it, and then placed F.J. in custody.

The court found Ferguson's testimony credible and denied the motion. The parties stipulated to Ferguson's testimony at trial, and the judge found F.J. delinquent. She sentenced him to 18 months' probation with various conditions.

F.J. appeals, arguing that the trial court erred in ruling that the stop and the search were proper.

## ANALYSIS

■ Officer Ferguson stopped and frisked F.J. Whether the stop was justified and whether the frisk was justified are two distinct inquiries. *People v. Galvin*, 127 Ill. 2d 153, 163, 535 N.E.2d 837, 841-42 (1989). The fact that a police officer has reason to stop an individual does not necessarily mean that the additional intrusion of a search for weapons will also be warranted. *People v. Pence*, 225 Ill. App. 3d 1061, 1063, 588 N.E.2d 1245, 1246 (1992). A police officer may conduct an investigatory stop when "the officer reasonably infers from the circumstances that the person is committing, is about to commit, or has committed" a criminal offense. 725 ILCS 5/107—14 (West 1996). Under *Terry v. Ohio*, 392 U.S. 1, 21, 20 L. Ed. 2d 889, 906, 88 S. Ct. 1868, 1880 (1968), the officer must "be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." The Illinois Code of Criminal Procedure of 1963 (the Code) provides that a police officer may go on to make a search when the officer "reasonably suspects that he or another is in danger of attack." 725 ILCS 5/108—1.01

(West 1996); *Terry*, 392 U.S. at 27, 20 L. Ed. 2d at 909, 88 S. Ct. at 1883. We will first turn our attention to the question of the stop.

## I

■ Traditionally, Illinois courts have held simply that a trial court's finding in a suppression hearing was subject to reversal only. for manifest error. *Galvin*, 127 Ill. 2d at 164, 535 N.E.2d at 842. More recently, however, the Illinois Supreme Court has adopted a two-step approach under which the factual findings and credibility determinations of the trial court are reviewed for manifest error and then the reviewing court applies a *de novo* standard to the legal determination of whether suppression of the evidence is warranted under those facts. *People v. Mabry*, 304 Ill. App. 3d 61, 64, 710 N.E.2d 454, 456 (1999); *People v. Gonzalez*, 184 Ill. 2d 402, 411-12, 704 N.E.2d 375, 380 (1998). This is also the approach that has been adopted by the United States Supreme Court:

> "We therefore hold that as a general matter determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal. Having said this, we hasten to point out that a reviewing court should take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts by resident judges and local law enforcement officers." *Ornelas v. United States*, 517 U.S. 690, 699, 134 L. Ed. 2d 911, 920, 116 S. Ct. 1657, 1663 (1996).

In particular, when neither the facts nor the credibility of witnesses is contested, Illinois case law is clear that a *de novo* standard of review is appropriate. *People v. Carlson*, 185 Ill. 2d 546, 551, 708 N.E.2d 372, 374 (1999); *People v. Wardlow*, 183 Ill. 2d 306, 309, 701 N.E.2d 484, 485 (1998), *rev'd on other grounds*, 528 U.S. 119, 145 L. Ed. 2d 570, 120 S. Ct. 673 (2000). In this case neither the factual background nor the credibility of the witness is at issue, since the parties have accepted Officer Ferguson's testimony. Therefore, our review proceeds *de novo*.

■ According to the Code, the burden of proof in a suppression hearing is upon the movant. 725 ILCS 5/114—12(b) (West 1996). "Burden of proof" encompasses both the burden of going forward with evidence and the ultimate burden of persuasion of the trier of fact. *People v. Ziltz*, 98 Ill. 2d 38, 43-44, 455 N.E.2d 70, 72 (1983); *Board of Trade v. Dow Jones & Co.*, 108 Ill. App. 3d 681, 686, 439 N.E.2d 526, 530 (1982). It is more precise to say that the Code, as it has been interpreted by the courts in light of constitutional requirements, places the burden of *persuasion* on the movant in a suppression hearing. Once a defendant has established that a warrantless search was conducted and he was doing nothing unusual at the time,

the burden of going forward with the evidence to show the legal propriety for the search shifts to the State. *People v. LaGrone*, 124 Ill. App. 3d 301, 303, 464 N.E.2d 712, 714 (1984). This reading of the Code comports with *Terry*, which requires the police officer "to point to specific and articulable facts" justifying the stop. *Terry*, 392 U.S. at 21, 20 L. Ed. 2d at 906, 88 S. Ct. at 1880. The burden of persuasion, however, does not shift. *Ziltz*, 98 Ill. 2d at 43-44, 455 N.E.2d at 72.

■ Here, F.J.'s counsel elicited sufficient evidence from Officer Ferguson to make out a *prima facie* case. The burden of production then shifted to the prosecution to provide the specific and articulable facts from which the officer reasonably inferred that F.J. was involved in criminal activity. In our view, the State did not carry this burden. The factors that the State offered as the basis for the stop are that it was night, there had been a "gang disturbance" nearby, it was a high crime area, and F.J. put something in his pocket.

It was around 10 p.m. on a Friday night when Officer Ferguson stopped the respondent. It does not strike us that, even in a high crime area, there is anything unusual about people walking around outside at 10 p.m. that, without more, would provide a basis for a police stop.

Officer Ferguson testified that there had been a report of a "gang disturbance" on Roosevelt Road. Although the trial court referred to the incident as a "gang fight," Ferguson provided no information about the disturbance or its proximity to where F.J. was standing at the alley entrance.

The mere fact that a person is in a high crime area is not sufficient to justify the conclusion that he or she is involved in criminal activity. *Brown v. Texas*, 443 U.S. 47, 52, 61 L. Ed. 2d 357, 362-63, 99 S. Ct. 2637, 2641 (1979). It is, however, a factor that can be relevant to the inquiry of whether an officer had reasonable suspicion to make a *Terry* stop. *Illinois v. Wardlow*, 528 U.S. 124, 145 L. Ed. 2d at 576, 120 S. Ct. at 676. The defendant in *Wardlow* was carrying an opaque bag while he was in an area known for heavy narcotics trafficking. He fled when he saw a caravan of police vehicles converging on the area. Officers eventually cornered the defendant and then stopped him and conducted a protective search. They found a handgun in the opaque bag. The United States Supreme Court found that the stop was justified under the circumstances. *Wardlow*, 528 U.S. at 124, 145 L. Ed. 2d at 576, 120 S. Ct. at 676.

In our view, *Wardlow* is inapposite. In the instant case F.J. was standing and not running, as in *Wardlow*. Significantly, the Court in *Wardlow* stated: "Headlong flight—wherever it occurs—is the consummate act of evasion: it is not necessarily indicative of wrongdoing, but

it is certainly suggestive of such." *Wardlow,* 528 U.S. at 124, 145 L. Ed. 2d at 576, 120 S. Ct. at 676. In the case *sub judice,* Officer Ferguson testified that F.J. put something in his pocket as he approached. However, he also testified that he had no idea what the object was. He did not testify that it looked like a handgun or contraband or anything that would naturally arouse suspicion. Putting something in one's pocket is subject to many plausible innocent explanations. *People v. Anderson,* 304 Ill. App. 3d 454, 711 N.E.2d 24 (1999), is an instructive case. In *Anderson,* the court held that the fact that a person put something in his pocket was not sufficient to justify a search under *Terry.*

> "We do not believe that the mere fact that a person put something into his pocket would cause a reasonable person to fear for his safety. As the trial court observed, a person standing on the street may reach into his pocket to put away keys, cigarettes, sunglasses, or any number of innocuous objects." *Anderson,* 304 Ill. App. 3d at 463, 711 N.E.2d at 30.

Similarly, here, the fact that someone puts something in his or her pocket does not justify the inference that the person is involved in criminal activity.

The State urges that we should trust the reasonableness of Officer Ferguson's actions because "trained police officers may be able to perceive and articulate meaning in conduct which would be wholly innocent to the untrained observer." *People v. DeHoyos,* 172 Ill. App. 3d 1087, 1092, 527 N.E.2d 319, 323 (1988). It is true that we should conduct our review giving due weight to inferences drawn by local law enforcement officers. *Ornelas,* 517 U.S. at 699, 134 L. Ed. 2d at 920, 116 S. Ct. at 1663. But we cannot simply assume that the seemingly innocuous behavior of F.J. provided Officer Ferguson with an objectively reasonable basis to make a stop. "[A] standard does not become subjective rather than objective merely because it takes into account the special skills and knowledge of the actor." 4 W. LaFave, *Search & Seizure* § 9.4(a), at 141 (3d ed. 1996). Of course, it may indeed be the case that Officer Ferguson's trained eye could perceive special significance in F.J.'s behavior. But if so, it was incumbent upon the State to elicit testimony explaining this. The officer's expertise does not relieve the State of the burden of production. "[I]t is for the police to articulate the facts and what their experience reveals as to those facts." 4 W. LaFave, *Search & Seizure* § 9.4(a), at 141-42 (3d ed. 1996).

An instructive case is *United States v. Cortez,* 449 U.S. 411, 66 L. Ed. 2d 621, 101 S. Ct. 690 (1981). In *Cortez,* the Border Patrol stopped a truck carrying illegal aliens. The officers stopped the truck based on

several circumstances and characteristics that would normally seem of little significance. However, the agents explained that they had been conducting an investigation for several weeks that led them to believe that a vehicle with just those characteristics would be carrying illegal aliens at just that time and place. Accordingly, the Court found that the stop was justified. *Cortez*, 449 U.S. at 421, 66 L. Ed. 2d at 631, 101 S. Ct. at 697. When officers explain the inferences made possible by their law enforcement experience that give the circumstances surrounding the investigative stop special meaning, this can provide a basis for a finding of reasonable suspicion. But when, as in *Brown v. Texas*, the officers describe a person engaged in seemingly innocent activity and merely assure the court that he "looked suspicious," there is no basis for such a finding. *Brown*, 443 U.S. at 52, 61 L. Ed. 2d at 362, 99 S. Ct. at 2641.

Since the State did not present sufficient evidence to show that the stop was justified, the weapon that was the basis for the arrest and conviction should have been suppressed as the product of an unconstitutional seizure of F.J.'s person. *Wong Sun v. United States*, 371 U.S. 471, 487-88, 9 L. Ed. 2d 441, 455, 83 S. Ct. 407, 417 (1963).

## II

We now turn to the question of the frisk. The State argues that, even if there was not a sufficient basis for a *Terry* stop, the handgun need not be suppressed, because there was no stop, only a frisk. According to the State, regardless of whether there were grounds for a stop, a frisk was justified. We disagree.

■ In our view, the reasons adduced with respect to the stop are also dispositive as to the frisk. An officer may conduct a protective search if he has reason to believe that the suspect is armed and dangerous *and* "[s]o long as the officer is entitled to make a forcible stop." *Adams v. Williams*, 407 U.S. 143, 146, 32 L. Ed. 2d 612, 617, 92 S. Ct. 1921, 1923 (1972); see *United States v. King*, 990 F.2d 1552, 1557 (10th Cir. 1993). Significantly, the Code allows a protective search "[w]hen a peace officer has stopped a person for temporary questioning pursuant to Section 107—14 of this Code." 725 ILCS 5/108—1.01 (West 1996); see *People v. Davis*, 86 Ill. App. 3d 557, 561, 407 N.E.2d 1109, 1113 (1980).

The reason a frisk presupposes the right to make a stop is that, as Justice Harlan pointed out in his *Terry* concurrence, if "a policeman has a right *** to disarm such a person for his own protection, he must first have a right not to avoid him but to be in his presence." *Terry*, 392 U.S. at 32, 20 L. Ed. 2d at 912, 88 S. Ct. at 1885 (Harlan, J., concurring). Thus, Professor LaFave explains:

"For example, if a policeman sees a suspicious bulge which possibly could be a gun in the pocket of a pedestrian who is not engaged in any suspicious conduct, the officer may not approach him and conduct a frisk. And this is so even though the bulge would support a frisk had there been a prior lawful stop. Likewise, if an officer, lacking the quantum of suspicion required by *Terry* to make a forcible stop, instead conducts a non-seizure field interrogation, he may not frisk the person interrogated upon suspicion that he is armed; in such a case the officer may protect himself by not engaging in the confrontation." 4 W. LaFave, *Search & Seizure* § 9.5(a), at 247-49 (3d ed. 1996).

Since Officer Ferguson did not provide specific and articulable facts that would warrant a stop, the protective search also lacked a constitutionally sufficient basis.

Accordingly, the judgment of the trial court is reversed and remanded.

Reversed and remanded.

McBRIDE and GORDON, JJ., concur.