2020 IL App (1st) 192496-U

No. 1-19-2496

Third Division
May 6, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| *In re* J.P., a Minor, | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Cook County. |
| Petitioner-Appellee, | ) | |
| | ) | No. 19 JD 979 |
| v. | ) | |
| | ) | Honorable |
| J.P., | ) | Joanne F. Rosado, |
| | ) | Judge, presiding. |
| Respondent-Appellant). | ) | |

JUSTICE COBBS delivered the judgment of the court.
Justices McBride and Howse concurred in the judgment.

**O R D E R**

¶ 1     *Held*:   The trial court's denial of respondent's motion to quash arrest and suppress evidence and adjudication of delinquency is affirmed where law enforcement had reasonable suspicion to conduct a *Terry* stop and to search respondent for weapons.

¶ 2     Minor-respondent, J.P., appeals from the juvenile court's adjudication of delinquency pursuant to the Juvenile Court Act of 1987 (Act) (705 ILCS 405/5 *et seq.* (West 2018)) and sentence of 24 months of probation and 30 hours of community service. Following a simultaneous suppression hearing and bench trial, the court denied respondent's motion to suppress and found him delinquent of aggravated unlawful use of a weapon (AUUW) (720

ILCS 5/24-1.6(a)(1) (West 2018)) and unlawful possession of a firearm (UPF) (720 ILCS 5/24-3.1(a)(1) (West 2018)). On appeal, he contends that his adjudication should be reversed because the trial court should have granted his motion to suppress and quash arrest. For the following reasons, we affirm.

¶ 3                                     I. BACKGROUND

¶ 4        Following events that transpired on June 26, 2019, the State filed a petition for adjudication of wardship against respondent on two counts of AUUW and one count of UPF. On July 25, 2019, respondent moved to quash arrest and suppress evidence. The case proceeded to a simultaneous suppression hearing and bench trial held on October 23, 2019. The evidence adduced at the proceeding is as follows.

¶ 5        Respondent testified that on June 26, 2019, around 11:33 p.m., he was standing outside a Chicago Transit Authority (CTA) train platform located at 15 West 69th Street. Three police officers wearing police vests and equipped with weapons at their waist approached and "grabbed" him. Respondent stated that, at this point, he did not feel free to leave. The officers conducted a pat-down of his person and recovered a gun from his right pant pocket. The officers handcuffed and placed respondent in a police vehicle and asked him how old he was. He responded that he was 15 years old.

¶ 6        On cross-examination, respondent admitted that he knew there was a curfew for minors in Chicago, though he was not sure as to the specific time restrictions. He stated that the officers did not pat his right pant pocket first when they searched him. He also admitted that he did not have a Firearm Owner's Identification Card or a concealed carry license.

¶ 7        Chicago police officer Marco Torres testified that he was on duty on the night of June 26, 2019. He was wearing plain clothes with a police vest, his star badge and name tag, and his

full duty belt. He was driving an unmarked police vehicle with two other police officers. Officer Torres observed respondent standing outside the CTA stop. He parked the vehicle about ten feet away. Respondent looked underage because of "his youthful appearance" and his lack of facial hair and, therefore, seemed to be in violation of the curfew. Officer Torres reiterated that respondent "[j]ust looked really young." As he approached respondent on foot, Officer Torres observed an L-shaped hard object or bulge in respondent's right pant pocket, which, based on his experience and training as a police officer, he believed to be a firearm. Officer Torres then informed respondent that he was a police officer and conducted a pat-down of his person, at which point he felt a gun. He then alerted the other two officers and he recovered the gun from respondent's pocket. The gun was an unloaded blue steel semi-automatic Beretta, which was later inventoried. Officer Torres stated that the gun was small enough to be concealed on somebody's person. He testified that during this investigation, respondent "freely stated that he was fifteen and that he had the gun for protection." Respondent was handcuffed and transported in the police vehicle to the police station. Officer Torres stated that respondent was not engaged in any lawful activities under the Wildlife Code.

¶ 8        Officer Torres explained that a curfew investigation was "when we believe we see someone under seventeen out past ten o'clock on the week days or eleven o'clock on the weekends. We just approach them and, you know, make sure they have a guardian with them or something like that. And if they don't, it's just basically a free ride home to the parent or guardian." He stated that June 26, 2019, was a Thursday, making the curfew time ten o'clock. He spotted respondent outside at the CTA stop around 11:33 p.m. Officer Torres stated that he had conducted over a hundred curfew investigations during his career. He decided to do a curfew investigation in the present case because he "thought it was suspicious that after he looked at

us, it looked like he was going to run back into the platform. So as I got closer, I could see that he was just a young child." On cross-examination, Officer Torres testified that when he observed respondent initially, respondent grabbed his waist and ran "maybe two or three steps" back towards the platform.

¶ 9 After conclusion of the proceeding, the trial court denied respondent's motion, finding that "the officer says that it started out as a curfew investigation and then eventually led to something else *** when he sees the L-shaped object and that's when he starts patting him down." The court found Officer Torres to be more credible because "[t]he minor [was] not exactly clear as to what went on." The court found respondent was not guilty of count 1 (AUUW) but guilty as to counts 2 (AUUW) and 3 (UPF). The court later sentenced respondent to 24 months of probation, along with 30 hours of community service and other probation conditions.

¶ 10                                   II. ANALYSIS

¶ 11 On appeal, respondent contends that the trial court erred in denying his motion to quash arrest and suppress evidence because Officer Torres violated his fourth amendment right against unreasonable search and seizures. Specifically, Officer Torres did not have the requisite reasonable suspicion to conduct a *Terry* stop on respondent and to search his person for weapons. The State, on the other hand, argues that the court properly denied the motion because Officer Torres was justified in conducting a *Terry* stop based on a reasonable suspicion that respondent was in violation of the curfew ordinance and in conducting a protective pat-down based on his reasonable belief that respondent had a firearm in his pocket.

¶ 12 A trial court's ruling on a motion to quash arrest and suppress evidence is subject to a bifurcated two-prong standard of review. *Ornelas v. United States*, 517 U.S. 690, 699 (1996);

*People v. Johnson*, 237 Ill. 2d 81, 88 (2010). Under this standard, a reviewing court first accords great deference to the trial court's findings of fact and disregards those findings only when they are against the manifest weight of the evidence. *Johnson*, 237 Ill. 2d at 88. However, the trial court's ultimate legal conclusion as to whether suppression is warranted is subject to *de novo* review. *People v. Colyar*, 2013 IL 111835, ¶ 31. Consequently, a reviewing court "remains free to engage in its own assessment of the facts in relation to the issues presented and may draw its own conclusions when deciding what relief should be granted." *People v. Crane*, 195 Ill. 2d 42, 51 (2001).

¶ 13        Both the United States and Illinois Constitutions guarantee citizens the right against unreasonable searches and seizures. U.S. Const. amends. IV, XIV; Ill. Const. 1970, art. I, § 6. "Reasonableness under the fourth amendment generally requires a warrant supported by probable cause." *People v. Sanders*, 2013 IL App (1st) 102696, ¶ 12. However, not every warrantless encounter with law enforcement runs afoul of the fourth amendment. *People v. Almond*, 2015 IL 113817, ¶ 56. Illinois courts have recognized three different types of police-citizen encounters that do not implicate a citizen's fourth amendment rights. These encounters include: (1) consensual encounters; (2) brief investigatory stops, referred to as *Terry* stops, which must be supported by a reasonable, articulable suspicion of criminal activity; and (3) arrests, which must be supported by probable cause. *People v. Vasquez*, 388 Ill. App. 3d 532, 546-47 (2009). This case involves a *Terry* stop.

¶ 14        In *Terry*, the United States Supreme Court held that "an officer may, within the parameters of the fourth amendment, conduct a brief, investigatory stop of a citizen when the officer has a reasonable, articulable suspicion of criminal activity, and such suspicion amounts to more than a mere 'hunch.' " *People v. Gherna*, 203 Ill. 2d 177 (quoting *Terry v. Ohio*, 392 U.S. 1,

27). During a *Terry* stop, an officer may temporarily detain a suspect for questioning where the officer reasonably believes the individual has committed, or is about to commit, a crime. 392 U.S. at 21-22. The purpose of a *Terry* stop is to confirm or dispel the accompanying suspicions. *People v. Close*, 238 Ill. 2d 497, 512 (2010). "The validity of an investigative stop turns on the totality of the circumstances known to the officers at the time." *People v. Jackson*, 2012 IL App (1st) 103300, ¶ 18 (citing *People v. Pitman*, 211 Ill. 2d 502, 512 (2004)). Here, we must determine whether the *Terry* stop and the subsequent pat-down search was warranted based upon the totality of circumstances.

¶ 15    In this case, the State argues that Officer Torres had a reasonable suspicion of criminal activity, namely a violation of the curfew ordinance. Chicago's curfew ordinance designates curfew hours for minors (persons under 17 years of age) as:

"(A) For minors 12 through 16 years of age, 10:00 p.m. on any Sunday, Monday, Tuesday, Wednesday, or Thursday until 6:00 a.m. of the following day; and

\*\*\*

(C) For minors 12 through 16 years of age, 11:00 p.m. on any Friday or Saturday until 6:00 a.m. of the following day[.]"

Chicago Municipal Code, § 8-16-020(a)(1). The ordinance further provides that: "A minor commits an offense if he remains in any public place or on the premises of any establishment within the city during curfew hours." Chicago Municipal Code, § 8-16-020(b)(1). Under "Enforcement," the ordinance provides:

"Before taking any enforcement action under this section, a police officer shall ask the apparent violator's age and reason for being in the public place. The officer shall not issue a citation or make an arrest under this section unless the officer reasonably believes

that an offense has occurred and that, based on any response and other circumstances, no defense in subsection (c) is present."

Chicago Municipal Code, § 8-16-020(d).

¶ 16   Here, Officer Torres observed respondent standing outside the CTA platform at around 11:33 p.m. He believed respondent was underage based on his youthful appearance. Officer Torres also knew that it was past the designated weekday curfew hour of 10 p.m.  He decided to conduct an investigatory stop to determine whether there was a curfew violation. Such a stop was warranted under *Terry*, as Officer Torres had a reasonable suspicion that respondent was committing a crime. In sum, the officers reasonably suspected an ordinance violation based on the late hour of the weekday night and respondent's youthful appearance. Based on the totality of circumstances, we find that respondent's suspected curfew violation justified the *Terry* stop.

¶ 17   Having found that the *Terry* stop was justified, we must now determine whether the subsequent pat-down search was proper. Prior to investigating whether respondent was underage or whether he was accompanied by a guardian, Officer Torres searched respondent and recovered a firearm. As to the propriety of this search, "[a] police officer may perform a protective pat-down search where, after making a lawful stop, the officer has a reasonable articulable suspicion that he or another is in danger of attack because the defendant is armed and dangerous." *People v. Surles*, 2011 IL App (1st) 100068, ¶ 35. A protective pat-down search is not a search for evidence but only for weapons. *People v. Davis*, 352 Ill. App. 3d 576, 580 (2004). *Terry* also specifies when a protective pat-down for weapons is permissible: if " 'nothing in the initial stages of the encounter serves to dispel [the officer's] reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to

conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him.' " *Colyar*, 2013 IL 111835, ¶ 37 (quoting *Terry*, 392 U.S. at 30-31). "The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry*, 392 U.S. at 27.

¶ 18    Based on the record before us, we find that the protective pat-down was warranted under these circumstances. As discussed, Officer Torres had a reasonable suspicion that respondent was violating the curfew. Additionally, Officer Torres had a reasonable suspicion that respondent was armed. Based on his experience and training as a police officer, it was reasonable for Officer Torres to believe that the L-shaped bulge he observed in respondent's pocket was a firearm. See *People v. Morales*, 221 Ill. App. 3d 13, 18 (1991) ("A characteristic bulge in a validly stopped suspect's clothing is a circumstance which is generally sufficient to warrant a frisk."). However, "[a] single bulge in a defendant's clothing, by itself, does not justify a *Terry* stop and pat-down search." *People v. Goodum*, 356 Ill. App. 3d 1081, 1085 (2005). Here, we also have the added circumstance of respondent's suspected curfew violation. See *id.* at 1086 (finding that the combination of the characteristic "bulges" and the other circumstances related to the original reason for the *Terry* stop created a reasonable, articulable suspicion that the defendant was armed). Thus, we conclude that there was a lawful basis to search respondent, and, as a result, the recovered firearm was admissible as evidence.

¶ 19    We also briefly distinguish the cases to which respondent cites for support of his argument that Officer Torres did not have the requisite reasonable suspicion to conduct a *Terry* stop and a protective pat-down. First, respondent points to *People v. Sims*, 2014 IL App (1st) 121306.

In *Sims*, the defendant placed an object in the front of his pants and the officer recognized him from a prior arrest. *Id.* ¶ 15. This court held that those two facts were insufficient to create a reasonable suspicion and indicated that they merely constituted a hunch or an assumption. *Id.* In this case, we have the added facts that Officer Torres believed respondent to be in violation of curfew based on his young appearance and the time of day. Officer Torres also believed, based on the shape and size of the object, that respondent had a firearm in his pocket. These facts elevate the circumstances from a mere hunch to a reasonable suspicion, justifying the *Terry* stop and subsequent protective pat-down.

¶ 20        Respondent also cites to *People v. F.J.*, 315 Ill. App. 3d 1053 (2000). In *F.J.*, the juvenile defendant was arrested for UPF after a frisk revealed a handgun in his pocket. *Id.* at 1055. The testifying officer observed defendant put an object in his pocket. *Id.* The officer conducted a pat-down search and recovered a handgun. *Id.* The trial court denied defendant's suppression motion, but on appeal this court reversed, holding that the State did not carry its burden of showing that the officer had a reasonable suspicion of criminal activity to justify a *Terry* stop. *Id.* at 1059. The only facts elicited by the prosecution to support the stop was that it was nighttime, there had been a "gang disturbance" in the area, and it was a high crime area. *Id.* at 1057. The reviewing court did not find these sufficient to justify the conclusion that defendant was involved in criminal activity. *Id.* In contrast, here, Officer Torres clearly had a reasonable suspicion of a curfew violation, *i.e.* specific criminal activity, which warranted the *Terry* stop, and he had a reasonable belief that respondent had a weapon in his pocket based on his observation. Thus, neither of these cases contain circumstances akin to those involved herein.

¶ 21        Accordingly, the trial court properly denied respondent's motion to quash arrest and suppress evidence.

¶ 22                                 III. CONCLUSION

¶ 23          For the reasons stated, we affirm the judgment of the circuit court.

¶ 24          Affirmed.