2020 IL App (2d) 180300
No. 2-18-0300
Opinion filed December 22, 2020

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Winnebago County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 15-CF-2618 |
| PERCY F. BAKER, | ) ) | Honorable John S. Lowry, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
Justices Hutchinson and Jorgensen concurred in the judgment and opinion.

**OPINION**

¶ 1     Following a jury trial, defendant, Percy F. Baker, was convicted of aggravated robbery (720 ILCS 5/18-1(b)(1) (West 2014)) and sentenced to 22 years' imprisonment. He appeals, contending that the trial court erred in denying his motion to quash his arrest and suppress evidence where the police exceeded the scope of a *Terry* (see generally *Terry v. Ohio*, 392 U.S. 1 (1968)) stop by handcuffing him, placing him in a police car, and searching him. Because the evidence would inevitably have been discovered, we affirm.

¶ 2                                  I. BACKGROUND

¶ 3     Defendant filed a motion to quash his arrest and suppress cigarettes and money found in a search of his person. At a hearing on the motion, Sergeant Duane Johnson testified that on

November 9, 2015, he responded to a report of a robbery at a Walgreens on Kishwaukee Avenue. The dispatch stated that the suspect was a black male, 40 to 50 years old, and wearing a navy hooded sweatshirt, jeans, and a ski mask. The suspect reportedly fled down an alley.

¶ 4    Johnson drove to the area and saw defendant, who matched the suspect's general description. Johnson said that defendant looked in his direction and then quickly turned away. Johnson shined his spotlight on defendant, but defendant continued to walk away. As defendant proceeded down the sidewalk, he paused behind a tree. When he emerged, Johnson called to him to stop. When defendant did not do so, Johnson yelled that he would release his dog. Defendant stopped and put his hands out. At gunpoint, Johnson ordered defendant to the ground and handcuffed him.

¶ 5    Johnson patted defendant down but found no weapons. He observed some cigarettes in defendant's pocket as well as gloves sticking out of his sweatshirt. At some point, other officers arrived. Johnson ordered Officer David Cerasa to search defendant again and place him in a squad car.

¶ 6    Johnson then went to the tree behind which defendant had paused. There, Johnson found a gun on top of a pile of leaves. He then went to the Walgreens to view the surveillance video. After watching the video, he concluded that defendant's clothes matched those of the robber.

¶ 7    The trial court denied the motion to suppress. The court found that Johnson had reasonable suspicion to conduct a *Terry* stop and frisk. However, the officers exceeded the scope of a *Terry* frisk when they recovered the cigarettes. The court found, though, that the cigarettes, as well as any money found on defendant, would inevitably have been discovered.[1] The court

_____

    [1] Defendant's motion sought suppression of the cigarettes and money, but Johnson testified

reasoned that, after watching the surveillance video, Johnson had probable cause to arrest defendant and that a search incident to arrest would have uncovered the items.

¶ 8    At trial, Johnson testified consistently with his testimony at the suppression hearing. Cerasa testified that, at Johnson's direction, he searched defendant and secured him in a squad car. The search revealed $132 in small bills and three packages of Newport cigarettes.

¶ 9    Israel Rodriguez, a Walgreens customer present when the robbery occurred, told police that the robber was wearing a black hooded sweatshirt with maroon markings. Isaiah Jefferson was working the register that night. Around 7:40 p.m., a masked man pointed a gun at Jefferson's head and demanded money. Rodriguez's card transaction was pending, so Jefferson could not open the register. He walked to another register and opened it. The robber grabbed the 1, 5, and 10 dollar bills from the open drawer and left. Jefferson told the police that, although the robber was wearing a mask, he could see that he was a black man. The robber wore gloves and a faded black sweatshirt.

¶ 10    Officer Nolan Walker testified that, after interviewing witnesses, he put out a description of the suspect as a 40- to 50-year-old black man, who was 5 feet 8 inches and 190 pounds, wearing a blue hooded sweatshirt and jeans. Walker confirmed that Jefferson told him that the robber's sweatshirt was blue.

¶ 11    Chris Meyers said that he was in the manager's office when an employee came in and told him that the store had been robbed. Meyers identified a photograph of the scene showing that

---

that he did not observe any money while frisking defendant. However, the court held that, even if money was recovered during the frisk or later search of defendant, it would not be suppressed.

boxes of Newport cigarettes were missing from behind the register. Meyers checked the register and found it to be $137 short. All of the missing bills were ones, fives, and tens.

¶ 12    Detective Vince Kelly processed the scene on Kishwaukee Avenue where defendant was stopped. Kelly recovered a BB gun near a fence in that area.

¶ 13    The jury found defendant guilty of aggravated robbery. The trial court sentenced him to 22 years' imprisonment. Defendant timely appealed.

¶ 14                                  II. ANALYSIS

¶ 15    Defendant contends that the trial court erred in denying his motion to suppress the money and cigarettes. He does not dispute that both the stop and the initial frisk by Johnson were proper. He contends that the only search permitted during a *Terry* stop is a quick frisk for weapons. Defendant infers from the testimony at the suppression hearing and at trial that the cigarettes and money were seized during Cerasa's search of defendant after he was handcuffed. Defendant argues that the handcuffing turned the encounter from a *Terry* stop into an arrest requiring probable cause, which he claims was lacking at that time. Thus, defendant concludes, the fruits of Cerasa's search should have been suppressed.

¶ 16    In response, the State argues, as the trial court found, that even if defendant was illegally arrested, the evidence need not have been suppressed. The State points out that the investigation of the robbery was ongoing and that, after the police interviewed the witnesses and watched the surveillance tape, they would have had probable cause to arrest defendant. The money and cigarettes would then have been found in a search incident to arrest.

¶ 17    The fourth amendment to the United States Constitution guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., amend. IV. Fourth amendment reasonableness generally requires a

warrant supported by probable cause. *People v. Flowers*, 179 Ill. 2d 257, 262 (1997). A limited exception to the warrant requirement was recognized in *Terry*. There, the United States Supreme Court held that a police officer may sometimes briefly detain a person for investigatory purposes and, if necessary for safety, conduct a limited search for weapons. *Id.* Under *Terry*, an officer may briefly detain a person if the officer reasonably believes that the person has committed, or is about to commit, a crime. *Id.* (citing *Terry,* 392 U.S. at 22). If the officer reasonably believes that the person stopped is armed and dangerous, the officer may subject the person to a limited search for weapons, commonly referred to as a " 'frisk.' " *Id.* (citing *Terry,* 392 U.S. at 24).

¶ 18    Whether an investigatory stop is valid is a separate question from whether a frisk is valid. *Id.* at 263. The sole justification for the search is to protect the police officer and others in the vicinity, not to gather evidence. *Id.* The scope of the search is therefore strictly limited to a search for weapons. *Id.*

¶ 19    In reviewing a trial court's ruling on a suppression motion, we apply a two-part standard of review. *People v. Cosby*, 231 Ill. 2d 262, 271 (2008) (citing *People v. Luedemann*, 222 Ill. 2d 530, 542-43 (2006), citing *Ornelas v. United States,* 517 U.S. 690, 699 (1996)). Under this standard, we defer to the trial court's factual findings and reverse them only if they are against the manifest weight of the evidence. *Id.* However, we review *de novo* the trial court's ultimate legal ruling as to whether suppression is warranted. *Id.*

¶ 20    As noted, defendant does not dispute that both the stop and the initial frisk were proper. Defendant was found near the Walgreens and matched the general description of the robber, who was reported to have a gun. The parties dispute whether defendant was illegally arrested, but we need not decide this issue because we agree with the trial court that the evidence would have been discovered in any event.

¶ 21     "For the inevitable discovery doctrine to apply, three criteria must be met: (1) the condition of the evidence must be the same when found illegally as it would have been when found legally; (2) the evidence would have been found by an independent line of investigation untainted by the illegal conduct; and (3) the independent line of investigation must have already begun when the evidence was discovered illegally."  *People v. Shanklin*, 250 Ill. App. 3d 689, 696 (1993).   Here, there is no question that the police had already begun investigating the robbery when the allegedly illegal search was conducted.   Defendant, however, disputes the first two elements.   He contends that, "if [he] had not been illegally arrested, there is no guarantee that the money or cigarettes would not have been used or consumed."   Defendant further argues that the "evidence could only have been discovered during a thorough search of the defendant's person which was facilitated by keeping the defendant in custody illegally until probable cause was developed."   Notably, defendant cites no authority for these assertions.

¶ 22     As noted, police were already investigating the robbery when defendant was stopped. After handing defendant off to Cerasa, Johnson searched the area where defendant disappeared behind a tree and found a BB gun on top of a pile of leaves.   He then went to the Walgreens to continue the investigation.   There, he learned that video showed the suspect wearing shoes with a unique design that matched those defendant wore.   Also, a unique emblem on the suspect's clothes was identical to one on defendant's clothes.   At this point, the police had probable cause to arrest defendant for the robbery, and a search incident to arrest would undoubtedly have revealed the contraband.   See *People v. Bailey*, 159 Ill. 2d 498, 503 (1994) (search incident to arrest is a traditional exception to the warrant requirement as it is reasonable for police to search an arrestee for weapons or evidence that could be concealed or destroyed).

¶ 23 Defendant's contention that "there is no guarantee that the money or cigarettes would not have been used or consumed" is sheer speculation and fails to account for the fact that the police could legally detain defendant while they continued their investigation. A *Terry* stop must be limited in scope and duration, lasting no longer than necessary to effectuate the stop's purpose. *People v. Johnson*, 408 Ill. App. 3d 107, 113 (2010). Nevertheless, a *Terry* stop may last for a reasonable time while the officer involved attempts to confirm or deny his suspicions. *People v. Johnson*, 387 Ill. App. 3d 780, 790 (2009). It is difficult to discern from the record precisely how much time elapsed between Johnson's first contact with defendant and defendant's formal arrest for the robbery, but defendant makes no argument that the duration of his detention was unreasonably long.

¶ 24 *People v. Calderon*, 336 Ill. App. 3d 182 (2002), on which defendant relies, is distinguishable. There, after receiving an anonymous tip that the defendant's companions had large amounts of drugs and drug proceeds, the police stopped a car in which the defendant was riding. The defendant and her companions were then detained for more than an hour while police searched for the drugs. The trial court specifically found that the defendant's detention exceeded the reasonable scope of the investigation. *Id.* at 193. Here, there was no finding, and defendant makes no argument, that the length of the detention was longer than necessary to complete the investigation.

¶ 25                                III. CONCLUSION

¶ 26 The judgment of the circuit court of Winnebago County is affirmed.

¶ 27 Affirmed.

---

**No. 2-18-0300**

---

| | |
|---|---|
| **Cite as:** | *People v. Baker*, 2020 IL App (2d) 180300 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Winnebago County, No. 15-CF-2618; the Hon. John S. Lowry, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | James E. Chadd, Thomas A. Lilien, and Erin S. Johnson, of State Appellate Defender's Office, of Elgin, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Marilyn Hite Ross, State's Attorney, of Rockford (Patrick Delfino, Edward R. Psenicka, and John G. Barrett, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

---