2022 IL App (2d) 210546-U
No. 2-21-0546
Order filed August 15, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Carroll County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 20-CF-37 |
| CHRISTOPHER J. NORTUNEN, | ) ) | Honorable John J. Kane, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE BRENNAN delivered the judgment of the court.
Justices Jorgensen and Schostok concurred in the judgment.

**ORDER**

¶ 1     *Held*:  Temporary seizure of defendant was reasonable where (1) the officer observed him and his companion on bicycles coming from a high-crime area where a recent explosion was heard and (2) Savanna had a public-safety problem with people detonating homemade explosives.  Moreover, these circumstances, combined with defendant's prior arrests in which he was found with weapons, justified the officer in performing a protective frisk.

¶ 2     Following a jury trial in the circuit court of Carroll County, defendant, Christopher J. Nortunen, was convicted of possession of less than five grams of a substance containing methamphetamine (720 ILCS 646/60(b)(1) (West 2018)).  Defendant argues on appeal that the trial court erred in denying his motion to suppress evidence.  We affirm.

¶ 3                                    I. BACKGROUND

¶ 4      At the suppression hearing, Savanna police lieutenant Nicholas Meeker testified that he was at the police department on March 27, 2020, at approximately 9:00 p.m., when he heard "a loud explosion" from behind the building, to the south "[t]owards the Bowen Street area." Meeker had heard such explosions before in Savanna, which had a problem with people making homemade explosive devices and detonating them around town.

¶ 5      After the explosion, "[a]ll of the officers in the [police department] left and began checking the area." Meeker drove his squad car to the intersection of Bowen Street and East Fifth Street. Meeker described Bowen Street as a high-crime area. At that intersection, he encountered a pedestrian, Anthony Green. Green told Meeker that he heard the explosion coming from farther southeast. Meeker began traveling in that direction when he encountered two bicyclists "coming from the approximate area that [Green] described." According to Meeker, the bicyclists "were the only other subjects [he] observed out at the time."

¶ 6      Meeker turned his squad car around to make contact with the bicyclists, who drove into the parking lot of a Dollar General store. Meeker acknowledged that the only reason he pursued the bicyclists was that "they were coming from the general direction of the explosive noise." One of the bicyclists left the parking lot. Meeker made contact in the parking lot with the other bicyclist, who was wearing a face mask. Meeker told the bicyclist that he was investigating a loud explosion and that he had seen the bicyclists coming from the area where the explosion was heard. The bicyclist said he was not involved. As the man spoke, Meeker recognized him as defendant. Meeker had encountered defendant on about a dozen prior occasions and was aware that defendant had previously been arrested with weapons in his possession. Concerned for his safety because of defendant's history, Meeker asked defendant to step off his bike so that Meeker could conduct a

pat-down search.  When Meeker attempted to place defendant's hands behind his back, defendant said that he could not bring his hands into that position because "his right sleeve was full of glass tubing."  Meeker allowed defendant to put his hands above his head instead of behind his back.  When defendant did so, the pocket of his hoodie "gapped open" and Meeker observed what appeared to be a methamphetamine pipe with residue in it.  Meeker removed the tubing from defendant's sleeve and placed defendant under arrest.  Meeker then found what appeared to be a homemade explosive device in defendant's pocket.

¶ 7       No other witnesses testified at the suppression hearing.  The trial court denied the motion to suppress.

¶ 8       The matter proceeded to a jury trial.  Meeker testified, offering essentially the same account of his encounter with defendant as he provided at the suppression hearing.  The State presented evidence that the residue in the pipe that Meeker recovered from defendant tested positive for the presence of methamphetamine.

¶ 9       Defendant testified that he used the pipe to smoke marijuana.  The pipe was designed to filter the marijuana smoke through water.  Defendant testified that he smoked "sugar wax," a "fluffy kind of yellow marijuana," through the pipe and that he added tea to the water to improve the taste.  Although defendant's testimony was not entirely clear, he appeared to indicate that the residue found on the pipe was the product of the sugar wax and the tea.  He denied using the pipe to smoke methamphetamine on March 27, 2020.

¶ 10      The jury returned a guilty verdict.  Defendant did not file a posttrial motion.  The trial court sentenced defendant to a two-year prison term.  This appeal followed.

¶ 11                                    II. ANALYSIS

¶ 12    Defendant argues that the trial court erred in denying his motion to suppress.  We apply a bifurcated standard of review to a trial court's ruling on a motion to suppress.  We defer to the trial court's findings of fact, reversing them only if they are against the manifest weight of the evidence. *People v. Heritsch*, 2017 IL App (2d) 151157, ¶ 8.  However, we review *de novo* the trial court's legal conclusion of whether a search or seizure was unconstitutional.  *Id.*

¶ 13    The fourth amendment to the United States Constitution (U.S. Const., amend. IV) prohibits unreasonable searches and seizures.  Subject to various exceptions, a search or seizure without a warrant is unconstitutional.  *People v. LeFlore*, 2019 IL 116799, ¶ 17.  One such exception to the warrant requirement was announced in *Terry v. Ohio*, 392 U.S. 1 (1968), which held that the fourth amendment permits an officer to "conduct a brief, investigatory detention when he or she has a reasonable suspicion that a person is committing, is about to commit, or has committed a criminal offense."  *People v. Flunder*, 2019 IL App (1st) 171635, ¶ 26.  For this type of seizure, commonly known as a "*Terry* stop," to pass constitutional muster, "[t]he officer's reasonable suspicion must be more than a hunch and must be supported by specific and articulable facts."  *Id.*

¶ 14    *Terry* also recognized that, during investigative detention, it is constitutionally permissible under certain circumstances for an officer to conduct a limited search for weapons, commonly referred to as a "frisk."  *People v. Baker*, 2020 IL App (2d) 180300, ¶ 17.  A frisk is permissible "[i]f the officer reasonably believes that the person stopped is armed and dangerous."  *Id.*  As noted in *Baker*:

> "Whether an investigatory stop is valid is a separate question from whether a frisk is valid. [Citation.]  The sole justification for the search is to protect the police officer and others in the vicinity, not to gather evidence.  [Citation.]  The scope of the search is therefore strictly limited to a search for weapons."  *Id.* ¶ 18

Whether a frisk is permissible is determined by an objective standard. *People v. White*, 2020 IL App (1st) 171814, ¶ 20. "The question is whether a reasonable person in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Id.*

¶ 15    Before discussing the merits of defendant's contentions, we consider whether, by failing to file a posttrial motion, defendant has forfeited his argument that the trial court erred in denying his motion to suppress. It is well established that, to preserve an issue for appellate review, the defendant must raise the issue at trial *and* in a written posttrial motion. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). However, as defendant notes, in *People v. Cregan*, 2014 IL 113600, ¶ 16, our supreme court recognized that *Enoch* carved out an exception to the forfeiture rule for "constitutional issues that were properly raised at trial and may be raised later in a postconviction petition." The State argues that this exception "swallow[s]" the *Enoch* forfeiture rule. The argument is meritless. The exception affirmed in *Cregan* applies only to constitutional issues; the *Enoch* forfeiture rule stands as to ordinary trial error. The State also argues that defendant has provided insufficient analysis of how the *Cregan* exception applies here. It is clear, however, that defendant's claim of a fourth-amendment violation was properly raised at trial and would be cognizable in a proceeding under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2020)). The Act provides that a prisoner may institute a proceeding under the Act if he or she alleges "in the proceedings which resulted in his or her conviction there was a substantial denial of his or her rights under the Constitution of the United States or of the State of Illinois or both." *Id.* § 122-1(a)(1).

¶ 16    As discussed, the evidence at the suppression hearing was that Meeker and others at the Savanna police department heard a loud explosion from south of the police department "[t]owards the Bowen Street Area," which Meeker described as a high-crime area. Meeker proceeded in his

squad car to attempt to determine the source of the explosion. He encountered a pedestrian who indicated that the explosion came from farther southeast. Meeker proceeded in that direction and encountered defendant and another individual coming in the opposite direction on bicycles. The two bicyclists rode into the parking lot of a Dollar General store. Meeker confronted defendant in the parking lot.

¶ 17    Defendant argues that "simply being observed coming from the general direction of a loud explosion, the nature of which is unknown, does not amount to reasonable suspicion." The argument is unpersuasive. Although Meeker did not pinpoint the exact location of the explosion, he testified that it was loud, which suggested that it had occurred in proximity to the police department. Meeker testified that Savanna had a problem with people detonating homemade explosives—an obvious public-safety issue. Through a pedestrian, Meeker was better able to ascertain where the sound originated. Thus, it was reasonable for Meeker to conclude that defendant and the other individual on bicycles had come from the area of the explosion. Furthermore, Meeker testified that they were the only individuals (other than the pedestrian) who were in the area at the time. Defendant argues that he and the other bicyclist "were not the only people in the vicinity where Meeker testified that the Dollar General store was open and there were other cars in the lot." However, shoppers at the store could reasonably be excluded as suspects in the explosion under investigation.

¶ 18    Furthermore, defendant was found in a high-crime area. Defendant argues that that fact, "*without more*, *** is not enough to conduct a *Terry* stop." (Emphasis added.) However, when considered together with the other circumstances described above, defendant's presence in a high-crime area bolsters the trial court's conclusion that Meeker had a reasonable suspicion that defendant committed a crime.

¶ 19    Defendant next argues that, even if there were grounds for a *Terry* stop, there were no grounds to frisk him.   We note that the *Cregan* exception applied above does not save this particular argument from forfeiture.   The *Cregan* exception applies to issues that were properly raised at trial.   Defendant acknowledges that at trial he argued that the lawfulness of *both* the stop and the frisk depended on the existence of a reasonable suspicion that defendant had committed or was about to commit a crime.   On appeal, however, defendant argues that, even if the stop was supported by reasonable suspicion, Meeker could not permissibly frisk defendant without a reasonable belief that defendant was armed and dangerous.

¶ 20    Although arguments raised for the first time on appeal are normally forfeited (see, *e.g.* *People v. Magallanes*, 409 Ill. App. 3d 720, 726 (2011)), *People v. Daniel*, 2014 IL App (1st) 121171, ¶ 14, quoted by defendant, holds that " 'a claim is preserved if the trial court had an opportunity to address the essential claim.' "   Defendant contends that "the trial court addressed the issues raised on appeal and thus to the extent this Court finds the issues raised on appeal are separate from the issues articulated by trial counsel, this Court should still review them."   Even assuming, for the sake of argument, that the frisk contention is reviewable on this basis, we conclude that it is meritless.

¶ 21    Although Meeker had encountered defendant on approximately a dozen prior occasions and was aware that defendant had previously been arrested with weapons in his possession, defendant contends that "[s]imply knowing that a person has been previously arrested with weapons does not allow for a frisk."   Defendant further argues that "*merely* being in a high crime area does not justify a frisk."   (Emphasis added.)   The argument is unpersuasive because it focuses on these individual circumstances in isolation rather than the totality of the circumstances.   Grounds to frisk defendant did not exist "simply" because he had been found with weapons before

or "merely" because he was in a high-crime area. He was subject to being frisked based on both of those circumstances *in combination* with the additional circumstance that the police were investigating a possible explosion that had recently occurred in an area from which defendant was coming from. Although defendant contends that "Meeker testified that he could not be certain what caused the loud noise and the loud noise could have been lawful in origin," Meeker was aware that people had been detonating homemade explosive devices around town. The possibility that the noise was "lawful in origin" is insufficient to overcome the interest in officer safety underlying the authority to conduct a limited search for weapons under *Terry*. We conclude that a reasonable person in Meeker's circumstances could justifiably believe that defendant was armed and dangerous.

¶ 22                                    III. CONCLUSION

¶ 23    For the reasons stated, we affirm the judgment of the circuit court of Carroll County.

¶ 24    Affirmed.