2022 IL App (1st) 190716

No. 1-19-0716

Opinion filed: December 16, 2022

Sixth Division

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 16 CR 5118 |
| | ) | |
| PIERRE LOCKETT, | ) | Honorable |
| | ) | Neil J. Linehan & |
| Defendant-Appellant. | ) | Michael J. Kane, |
| | ) | Judges, presiding. |

_____

JUSTICE C.A. WALKER delivered the judgment of the court, with opinion.
Justices Hyman and Coghlan concurred in the judgment and opinion.

**OPINION**

¶ 1    Following a bench trial before Judge Michael J. Kane, defendant Pierre Lockett was found guilty of two counts of unlawful use of a weapon by a felon (UUWF) and sentenced to concurrent terms of seven years' imprisonment. On appeal, Lockett contends the trial court erred in denying his motion to suppress evidence that he had a firearm, where the police officers did not have a legal basis to pat him down upon stopping him. He also argues that his sentence violates the one-act, one-crime doctrine, as he received two sentences for a single act of possession. We reverse the trial court's denial of defendant's motion to quash arrest and suppress evidence where police

officers lacked reasonable suspicion that he was armed and dangerous when they conducted a pat-down. Defendant's convictions are vacated.

¶ 2                                    I. BACKGROUND

¶ 3     The State charged Lockett with nine counts but proceeded to trial on one count of being an armed habitual criminal (720 ILCS 5/24-1.7(a) (West 2016)) and two counts of UUWF (*id.* § 24-1.1(a)). It nol-prossed the remaining counts.

¶ 4     Prior to trial, on August 16, 2016, Lockett filed a "motion to quash arrest and suppress evidence," alleging that police officers unlawfully detained, searched, and arrested him without reasonable suspicion or probable cause. As a result of the "unlawful search," the police recovered a handgun and cannabis from him.

¶ 5     At a hearing on the motion before Judge Neil J. Linehan, Chicago Police Officer Healy[1] testified that on March 13, 2016, at about 1 p.m., he and his partner, Officer Kevin McCann, were driving an unmarked vehicle on the 2600 block of East 87th Street. Healy and McCann were in plain clothes, wore vests with a star or badge number on them, and had holstered weapons. Healy saw Lockett, whom he identified in court. Lockett looked in the officers' direction and "adjusted his waist area." The officers parked the vehicle about 10 feet from Lockett and exited their vehicle. As they approached Lockett, he reached for his waistband again and "stated along the lines [*sic*] that he just dropped a bag of weed." McCann then told Lockett to remove his hand from his waistband.

¶ 6     Healy was presented with a Chicago Police Department incident report that he authored, and Healy confirmed that the report reflected that Lockett did not state he "just dropped a bag of

_____

[1]The first name of Officer Healy does not appear in the transcript of the proceedings.

weed" until after McCann told him to remove his hand from his waistband. When asked if the report was correct, Healy testified, "Yes, but he grabbed his waistband again," and then confirmed again that what he wrote in the report was correct. He also confirmed that, prior to McCann ordering Lockett to remove his hand from his waistband, Healy did not observe Lockett violate any law, and he did not know Lockett or his parole status. Healy did not have a warrant to arrest Lockett.

¶ 7    On cross-examination, Healy confirmed that he learned Lockett was on parole after "the event." When McCann ordered Lockett to remove his hand from his waistband, McCann did not physically contact Lockett.

¶ 8    The trial court denied Lockett's "motion to quash arrest and suppress evidence."[2] The court stated that Lockett's adjusting of his waistband was "curious behavior" to the police officers, so they stopped their vehicle to speak to him "based on their experience." The court noted that Lockett was on a public way, and the officers had a "right to talk to any ordinary citizen." It was "up to that citizen whether or not he wants to stop and talk to the police unless the police are ordering [Lockett] over, ordering him to stop." The court stated that the officers had a right to "engage with" Lockett and then "stop" him once he repeatedly adjusted his waist and "uttered on his own that he dropped a bag of weed." The court found once Lockett's behavior "continued," the officers "certainly had a right to put their hands on him." At that point, one officer searched for the contraband while the other officer "did a protective pat down," which resulted in the recovery of the weapon.

---

[2]Judge Neil J. Linehan ruled on defendant's motion to suppress.

¶ 9     On April 4, 2017, Lockett filed a motion to reconsider, arguing that the officers' search was not justified, as it was based solely on his behavior of adjusting his waistband and statement that he dropped a "bag of weed." Lockett emphasized that Healy's testimony conflicted with his arrest report, which showed the officers ordered him to remove his hands from his pocket and detained him before he made the statement. Lockett asserted that the subsequent search was unconstitutional and requested that the court reconsider its denial of his motion to suppress. The trial court denied the motion, stating, "I do find the police officer to be credible" and "I believe my original ruling was specific and accurate."

¶ 10     At trial, McCann testified that he had been a Chicago police officer for over six years. On March 13, 2016, shortly after 1 p.m., he was in a patrol vehicle with his partner on the 2600 block of East 87th Street. He saw Lockett walking eastbound. He stopped and exited his vehicle, approached Lockett, had a "conversation" with him, and then patted him down. He recovered a loaded 9-millimeter handgun from Lockett's person.

¶ 11     On cross-examination, McCann testified that when he saw Lockett, Lockett was just walking and was not doing "anything else." McCann testified that while the police vehicle was moving, the officers saw Lockett "adjust his waistband" from about 10 or 15 feet. Because the officers believed Lockett "could have been possibly concealing a handgun," they exited their vehicle. As McCann and his partner approached Lockett, he adjusted his waistband a second time and simultaneously said that he had "dropped a bag of weed on the ground." McCann ordered him to remove his hands from his waistband. McCann's order and Lockett's statement were "pretty simultaneous." McCann then patted Lockett down and recovered the firearm from his right pants pocket. No cannabis was recovered. There was no body camera footage of the encounter.

¶ 12 The State submitted into evidence the certified copies of Lockett's three convictions from Iowa it used as predicates for the charges.

¶ 13 Lockett requested to reopen his motion to suppress, but the court denied his request.

¶ 14 The trial court found Lockett guilty of two counts of UUWF but acquitted him of being an armed habitual criminal. It denied Lockett's motion for a new trial, which alleged in relevant part that the court erred in denying his "motion to quash arrest and suppress evidence." The court sentenced Lockett to concurrent terms of seven years' imprisonment for both UUWF counts.

¶ 15                                          II. ANALYSIS

¶ 16 On appeal, Lockett argues that the trial court erred in denying his motion to suppress, where the police officers did not have a legal basis for frisking him. Lockett also contends that evidence of possession of one gun cannot support two convictions for UUWF.

¶ 17 The State responds that the officers' initial encounter with Lockett was consensual, and the officers had the right to approach him to ask questions. The State maintains that the officer conducted a proper stop and pat-down of Lockett for their safety and the safety of the public, as allowed under *Terry v. Ohio*, 392 U.S. 1 (1968).

¶ 18 The fourth amendment of the United States Constitution and the Illinois Constitution guarantee the "right of individuals to be free from unreasonable searches and seizures." *People v. Colyar*, 2013 IL 111835, ¶ 31; U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6. "Reasonableness under the fourth amendment generally requires a warrant supported by probable cause." *People v. Flowers*, 179 Ill. 2d 257, 262 (1997). However, " '[w]hen faced with special law enforcement needs, diminished expectations of privacy, minimal intrusions, or the like, *** certain general, or individual, circumstances may render a warrantless search or seizure reasonable.' "

*People v. Jones*, 215 Ill. 2d 261, 269 (2005) (quoting *Illinois v. McArthur*, 531 U.S. 326, 330 (2001)). Courts have categorized police-citizen encounters into three tiers: (1) the arrest of a citizen, which must be supported by probable cause, (2) a "temporary investigative seizure," or *Terry* stop, conducted pursuant to *Terry*, 392 U.S. 1, and (3) a consensual encounter, which involves "no coercion or detention" and thus implicates no fourth amendment interests. *People v. McDonough*, 239 Ill. 2d 260, 268 (2010).

¶ 19    Under the "fruit of the poisonous tree" doctrine, any evidence obtained by exploiting a fourth amendment violation "is subject to suppression as the 'fruit' of that poisonous tree." *People v. Henderson*, 2013 IL 114040, ¶ 33. When reviewing a trial court's ruling on a motion to suppress evidence, we apply the bifurcated standard of review adopted in *Ornelas v. United States*, 517 U.S. 690, 699 (1996). *People v. Luedemann*, 222 Ill. 2d 530, 542 (2006). Under that standard, we review the trial court's findings of historical fact for clear error, giving great deference to the court's factual findings and reversing them only if against the manifest weight of evidence, but we review *de novo* the court's ultimate determination on whether suppression is warranted. *Id.* We may consider evidence adduced in both the suppression hearing and at trial. *People v. Hood*, 2019 IL App (1st) 162194, ¶ 39.

¶ 20    There is no issue here regarding whether the officers' initial approach to Lockett was a consensual encounter as, in his reply brief, Lockett states he "does not challenge that he was not legally seized prior to the pat down." Rather, he disputes the constitutionality of his *Terry* pat-down.

¶ 21    Under *Terry*, " 'where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot…,' the officer

may briefly stop the suspicious person and make 'reasonable inquiries' aimed at confirming or dispelling his suspicions." *Minnesota v. Dickerson*, 508 U.S. 366, 373 (1993) (quoting *Terry*, 392 U.S. at 30). "When an officer is justified in believing that the individual whose suspicious behavior[,] he is investigating at close range is armed and presently dangerous to the officer or to others," the officer may "take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm." *Terry*, 392 U.S. at 24. The scope of the search is "strictly limited to a search for weapons," and its "sole justification" is "the protection of the police officer and others in the vicinity, not to gather evidence." *Flowers*, 179 Ill. 2d at 263. The right to frisk does not automatically flow from a valid *Terry* stop (*People v. Galvin*, 127 Ill. 2d 153, 165 (1989)), and "[w]hether an investigatory stop is valid is a separate question from whether a search for weapons is valid" (*Flowers*, 179 Ill. 2d at 263).

¶ 22 Here, based on the evidence presented at the motion to suppress hearing and at trial, the officers' decision to frisk Lockett was based on the following observations: Lockett looked in the direction of their unmarked vehicle; he adjusted his waistband once, while the officers were in the vehicle, causing them to suspect he was concealing a firearm; he adjusted his waistband a second time when the officers approached him on foot wearing plain clothes; and he stated that he dropped a "bag of weed" after being ordered to remove his hands from his waistband. Considering the circumstances known to the officers at the time of the pat-down (*People v. McMichaels*, 2019 IL App (1st) 163053, ¶ 22), there was no justification in believing Lockett was armed and dangerous, especially where he did not attempt to flee and simply adjusted his waistband. See *People v. Flunder*, 2019 IL App (1st) 171635, ¶ 39 (officers were not justified in frisking the defendant,

where the defendant did not attempt to flee, reached into his pocket, and honestly admitted possession of a firearm).

¶ 23 The State maintains that McCann's protective pat-down was justified, based on Lockett's adjusting his waistband and his statement that he dropped the "bag of weed." We disagree. Grabbing one's waistband is not in itself sufficient to support a reasonable suspicion of criminal activity, let alone that someone is armed and dangerous as required for a *Terry* frisk. See *In re Jarrell C.*, 2017 IL App (1st) 170932, ¶ 22 ("the mere holding up [someone's] pants or [p]utting something in one's pockets *** is not a hallmark of criminal activity" (internal quotation marks omitted)). Further, neither officer provided any articulation as to why Lockett's apparent announcement that he dropped cannabis, alone or taken with the waistband adjustment, supported a belief that he was armed and dangerous. See *People v. Rivera*, 272 Ill. App. 3d 502, 509 (1995) (general suspicion that the defendant "was involved in a drug transaction and because of this, he may have been armed" did not support reasonable suspicion to conduct a frisk, and "*Terry* requires more than a generalized belief or statement that narcotic dealers may carry weapons").

¶ 24 Here, the officers failed to identify any "specific and articulable facts necessary to justify a search for weapons." *Galvin*, 127 Ill. 2d at 169; see *People v. F.J.*, 315 Ill. App. 3d 1053, 1058 (2000) (while it may be the case that the officer's "trained eye" perceived special significance in the defendant's behavior, the police must "articulate the facts and what their experience reveals as to those facts" (internal quotation marks omitted)). Accordingly, we find that the officers unconstitutionally performed a pat down of Lockett without justification, and the trial court erred in denying his motion to suppress.

¶ 25    The State argues that, if we find a fourth amendment violation, we should nonetheless find that the exclusionary rule requiring evidence suppression does not apply because the officers acted in good faith when they performed the pat-down.

¶ 26    The United States Supreme Court created the exclusionary rule as a general deterrent to future fourth amendment violations. *Arizona v. Evans*, 514 U.S. 1, 10 (1995). Under this rule, evidence unconstitutionally gathered as the result of an unreasonable search or seizure is suppressed. *People v. Krueger*, 175 Ill. 2d 60, 74 (1996).

¶ 27    To the extent that the State raises the good-faith exception to the exclusionary rule, we find that the exception does not apply here.

¶ 28    The good faith exception to the exclusionary rule provides that "[w]here the particular circumstances of a case show that police acted with an objectively reasonable good-faith belief that their conduct [was] lawful, or when their conduct involved only simple, isolated negligence, there is no illicit conduct to deter." (Internal quotation marks omitted.) *People v. LeFlore*, 2015 IL 116799, ¶ 24. The exception was codified in section 114-12 of the Code of Criminal Procedure of 1963 (725 ILCS 5/114-12 (West 2016)). *People v. Strickland*, 2019 IL App (1st) 161098, ¶ 60. Under section 114-12(b)(1), "[t]he court shall not suppress evidence which is otherwise admissible in a criminal proceeding if the court determines that the evidence was seized by a peace officer who acted in good faith." 725 ILCS 5/114-12(b)(1) (West 2016).

¶ 29    Section 114-12(b)(2) defines good faith as follows:

"'Good faith' means whenever a peace officer obtains evidence:

(i) pursuant to a search or an arrest warrant obtained from a neutral and detached judge, which warrant is free from obvious defects other than non-deliberate errors in

preparation and contains no material misrepresentation by any agent of the State, and the officer reasonably believed the warrant to be valid; or

> (ii) pursuant to a warrantless search incident to an arrest for violation of a statute or local ordinance which is later declared unconstitutional or otherwise invalidated." *Id.* § 114-12(b)(2).

Our supreme court has also expanded the good-faith exception to include "good-faith reliance upon binding appellate precedent that specifically authorized a particular practice but was subsequently overruled." *Strickland*, 2019 IL App (1st) 161098, ¶ 61 (citing *LeFlore*, 2015 IL 116799, ¶¶ 29-31, citing *Davis v. United States*, 564 U.S. 229, 241 (2011)).

¶ 30    None of the three good faith exceptions apply here. There was no warrant to search or arrest Lockett. There is no indication in the record that Lockett was searched and arrested for violation of a statute or local ordinance later declared unconstitutional. Nor are we aware of any binding precedent that the police officers may have relied on when frisking Lockett, where there were no specific facts showing Lockett was armed and dangerous.

¶ 31    We recognize the State's concern regarding the severity of the remedy provided by the exclusionary rule. The United States Supreme Court in *Terry v. Ohio*, explored the reasons for suppression:

> "The wholesale harassment by certain elements of the police community, of which minority groups *** frequently complain, will not be stopped by the exclusion of any evidence from any criminal trial. *** [C]ourts still retain their traditional responsibility to guard against police conduct which is overbearing or harassing, or which trenches upon personal security without the objective evidentiary

justification which the Constitution requires. When such conduct is identified, it must be condemned by the judiciary and its fruits must be excluded from evidence in criminal trials." *Terry* , 392 U.S. at 14-15.

¶ 32    One federal judge enlarged on the court's comment regarding harassment:

"There are two specific aspects to this social problem. First, inappropriate use of *Terry* in America's minority neighborhoods offends the principle of equal justice under law. For, as we all know, courts would not approve the search of four men in business attire, conversing peaceably in front of a Starbucks, if the only basis for the search was a 'lookout' broadcast specifying a white man, medium height and build, wearing a business suit. Second, excessive *Terry* searches set poor black communities and the police on opposing sides of pitched battle. At a minimum, these perpetual intrusions leave young black men feeling bruised and insulted. Often enough, the anger leads to confrontations with the police, sometimes with violent or lethal consequences." *United States v. Goddard*, 491 F.3d 457, 468 (D.C. Cir. 2007) (Brown, J., dissenting).

¶ 33    Suppression of the evidence

"may seem like a drastic remedy in a case like this where a gun was actually found. However, we do not know how many men, if any, were stopped before one was found with a gun because only the ones who are charged move to suppress. The fourth amendment is a blunt-edged sword, but it protects the privacy of us all, both the ones with contraband and the ones without it." *Flunder*, 2019 IL App (1st) 171635, ¶ 40.

¶ 34 Where, as here, police officers approach a person, who is simply present on a public street and not observed committing any crime, and quickly frisk him with no evidence that he is armed and dangerous, we find the deterrent benefit of suppression outweighs any social costs. No evidence admitted at trial contradicted McCann's testimony, which showed that the confession did not precede the seizure. "Reasonable suspicion must be formed before the seizure occurs." *Buffkins v. City of Omaha*, 922 F.2d 465, 469 (8th Cir. 1990).

¶ 35 "[T]he pretrial ruling on a motion to suppress is not final and may be changed or reversed at any time prior to final judgment." *People v. Brooks*, 187 Ill. 2d 91, 127, 718 N.E.2d 88 (1999). The trial court erred by failing to reconsider the motion to suppress in light of McCann's testimony. See *People v. Cannon*, 293 Ill. App. 3d 634, 642, 688 N.E.2d 693 (1997).

¶ 36 We find that the evidence obtained through the illegal frisk of Lockett's person, here the firearm recovered from his pocket, is suppressed. Since Lockett could not have been convicted without that evidence, his convictions are vacated. See *People v. White*, 2020 IL App (1st) 171814, ¶ 29. Because Lockett's convictions are vacated, we do not address whether his convictions violate the one-act, one-crime rule, which the State concedes.

¶ 37                                        III. CONCLUSION

¶ 38 For the foregoing reasons, we reverse the trial court's order denying Lockett's motion to quash arrest and suppress evidence. The seized evidence is suppressed, and Lockett's convictions are vacated.

¶ 39 Reversed and vacated.

---

### *People v. Lockett*, 2022 IL App (1st) 190716

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 16-CR-5118; the Hon. Neil J. Linehan and the Hon. Michael J. Kane, Judges, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Rebecca I. Levy, of State Appellate Defender's Office, of Chicago, for appellant. |
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Douglas P. Harvath, Whitney Bond, and Ashley Moore, Assistant State's Attorneys, of counsel), for the People. |